UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

FILED
MAR 0 4 2026
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

RANDY FLOWERS, pro se, )
   Plaintiff, )
)
v. )  Case No.: 26-cv-4062
)
ILLINOIS STATE BOARD OF ELECTIONS; )
BERNADETTE MATTHEWS, Executive Director; )
JEREMY KIRK, Assistant Executive Director; )
LAURA K. DONAHUE, Chair; )
RICK S. TERVEN, SR., Vice Chair; )
JENNIFER M. BALLARD CROFT, Member; )
CRISTINA D. CRAY, Member; )
TONYA L. GENOVESE, Member; )
CATHERINE S. MCCRORY, Member; )
JACK VRETT, Member; )
CASANDRA B. WATSON, Member; )
KAREN KINNEY, Rock Island County Clerk; )
   Defendants. )

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

I. INTRODUCTION

1. Plaintiff brings this action under the First and Fourteenth Amendments and 42 U.S.C. § 1983 to challenge the constitutionality of Illinois' statutory signature requirements for independent congressional candidates, which impose insurmountable and unjust barriers to ballot access, burdening Plaintiff's rights to political association, political expression, and equal protection under the law.

2. The State of Illinois requires independent congressional candidates to collect 18-21 times the number of signatures required for the two major-party candidates seeking the same office. This disparity is not incidental; it is the direct result of Illinois' statutory formula requiring

independents to obtain 5% of the prior general-election vote, while major-party candidates need only 0.05% of their party's primary voters.

3. This disparity imposes severe, discriminatory and mathematically prohibitive burdens on plaintiff's ability to qualify for the ballot.

4. Plaintiff seeks declaratory and injunctive relief to prevent the enforcement of these excessive and unconstitutional requirements to ensure fair and equitable access to the electoral process.

II. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States.

6. Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims occurred within this District, and plaintiff resides in the Rock Island Division.

7. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

III. PARTIES

8. Plaintiff is a resident of Illinois' 17th Congressional District and seeks to run as an independent candidate for the United States House of Representatives in said district.

9. Defendants are the Illinois State Board of Elections, its executive officers, its members, and the Rock Island County Clerk, all sued in their official capacities.

IV. FACTUAL ALLEGATIONS

A. Illinois' Signature Requirement for Independent Candidates

10. Illinois requires independent congressional candidates in the 17th District to collect a minimum of 16,035 valid signatures within a 90-day circulation period, which is unreasonably excessive, especially when compared to the requirement imposed on major-party candidates.

11. To satisfy this requirement, an independent candidate must collect approximately 178 signatures per day, or 1,247 signatures per week, and do so without the benefit of a party infrastructure established in each county.

12. During the 2025-2026 election cycle, the two major parties were only required to obtain an average of 798 signatures, specifically, 852 for Democratic candidates and 744 for Republican candidates.

13. Thus, an independent candidate must gather more signatures in a single week than either major political party must gather in the entire 90-day petitioning period. The effect of the statutory scheme is to deter or prevent independent candidates from qualifying for the ballot.

14. This disparity imposes severe and unjustified burdens on Plaintiff's constitutional rights. This disparity is not merely unequal; it is mathematically improbable. It imposes a burden of eighteen to twenty-one times greater upon independent candidates than on major-party candidates.

15. The 16,035-signature threshold for U.S. House candidates combined with a limited circulation period places Illinois among the most restrictive in the nation, depriving prospective candidates of their freedom to participate in the electoral process.

16. To illustrate how Illinois' signature threshold and circulation period compare to national practices, Plaintiff provides the following summary of selected state requirements. This comparison reflects publicly available statutory thresholds and demonstrates the range of signature burdens and circulation periods used across the country.

17. Exhibit A summarizes signature thresholds and circulation periods for independent congressional candidates in selected states, demonstrating that Illinois' combined threshold and 90-day limit place it among the most restrictive jurisdictions in the nation.

Exhibit A

## Comparison of Independent Candidate Signature Requirements (Selected States)

| State | Signature Requirement | Percent of Voters | Circulation Period | Notes |
|---|---|---|---|---|
| Illinois | 16.035 s | ~5% of last 6-govt | 90 days | Among the highest burdens in the nation nation, short window, notarizatiom; add |
| Arizona | 3.000 | % 1–3–% depending ox | No fixed shortwindow | Significantly lower raw number, no compressed circulation period andingdd |
| Arkansas | 2.000 | 90 days | 90 days | Same circulation window as Illinois but with 87% fewer signatures. |
| California | 0 signature | N/A | N/A | Independent candidates may qualify by paying a filing fee; modest |
| Colorado | 800–1.500 | 1% | ≤150 days | Long circulation period, low threshold |
| Maine | 2.000 | No percent-based requrd | 6 months | Long window, but low threshold |
| West Virginia | 500 1% of votes cast) | | Several months | No short window but low threshold |
| New York | 3.500 | 42 days | 42 days | Short window but low threshold |

18. Following this comparison, Plaintiff continues to allege the facts demonstrating how Illinois' ballot-access scheme operates in practice.

B. Geographic and Logistical Burdens

19. Illinois' 17th Congressional District stretches across all or portions of 14 counties that impose substantial geographic and logistical hardships on independent candidates seeking to collect petition signatures.

20. The district requires extensive travel time to reach voters across its full span. The greatest driving distance within the district, from Rock Island to the southeastern portion of McLean County, is approximately 145 miles, with an estimated driving time of 2 hours and 40 minutes.

21. This expansive area significantly increases the time, cost, and difficulty of collecting the required petition signatures within the State's limited 90-day circulation window.

22. These geographic burdens exacerbate the severity of the statutory scheme and must be considered under the Anderson-Burdick balancing test.

C. Historical and Statistical Evidence

23. Publicly available election records show that no independent congressional candidate has ever succeeded in meeting the signature threshold required to appear on the general election ballot in Illinois.

24. Historical patterns reflect similar outcomes, with Illinois' high signature requirements and limited circulation period functioning as substantial barriers that independent congressional candidates have been unable to overcome in practice.

25. A statutory scheme that has never been successfully satisfied by any independent congressional candidate is, by definition, not a reasonable or nondiscriminatory regulation.

D. Voter Data Section

26. According to the Independent Voter Project, Illinois Voter Registration (updated Aug. 27, 2025), an estimated 2,808,533 Illinois voters, approximately 34.76% of the State's registered voters, are modeled as "unaffiliated" or independent. Their data, using L2 Data modeling,

suggests distribution of Illinois registered voters is as follows: Democrats: 3,044,805 (37.70%); Republicans: 2,223,314 (27.53%); Unaffiliated: 2,808,533 (34.76%).

27. A Gallup poll from January 2026 reported that 45% of adults nationwide identify as political independents, the highest level recorded since Gallup began tracking this measure in 1988. {See Jeffrey M. Jones, U.S. Independent Identification at Record High, Gallup (Jan. 2026).

28. "These statistics show that a substantial portion of Illinois voters are not affiliated with either major political party, yet independent candidates face significantly greater barriers to ballot access, limiting the ability of unaffiliated voters to support candidates who may more closely reflect their views. The State's statutory scheme thus denies a substantial portion of Illinois voters, over one-third of the electorate, the opportunity to support candidates who reflect their political identity

29. Despite the substantial number of independent voters, under Illinois' statutory scheme, independent candidates are not afforded a meaningful opportunity to participate in the electoral process.

30. To gain ballot access, independent candidates must collect 5% of the total number of voters in the last general election in their district, whereas the established major-party candidates are only required to collect 0.05% of their party's primary voters.

31. This requires independents to gain significantly more signatures. In the 17th District, in which plaintiff intends to run, this requires plaintiff to collect 18-21 times the number of signatures as Democratic and Republican candidates.

32. This serves neither legitimate state interests nor the interests of Illinois voters. It only benefits the self-interest of the two political parties who control the state legislature.

33. Thus, they wield the power to prevent third-party or no-party candidates from being viable contenders and offering voters a third choice.

34. Illinois typically invalidates 30–60% of signatures. Thus, in the 17th District, an independent candidate needs far more than the minimum 16,035 petition signatures to gain ballot access.

35. Plaintiff intends to qualify for the ballot but is substantially burdened by the statutory barrier.

## V. LEGAL STANDARD

36. When evaluating ballot-access restrictions, courts apply the balancing test established in Anderson v. Celebrezze, 460 U.S. 780 (1983), and Burdick v. Takushi, 504 U.S. 428 (1992). Courts must weigh:

a. The character and magnitude of the burden imposed on constitutional rights;

b. The interests asserted by the State; and

c. Whether those interests justify the burden imposed.

37. Severe burdens on First and Fourteenth Amendment rights are subject to strict scrutiny and must be narrowly tailored to advance compelling State interests.

38. Even lesser burdens must be justified by important State interests and must be reasonably related to those interests.

## VI. CLAIMS FOR RELIEF

Count I — First Amendment (Ballot Access)

39. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

40. Illinois requires independent congressional candidates to collect 16,035 valid signatures within a rigid 90-day circulation period, an eighteen- to twenty-one-fold disparity compared to the 744 to 852 signatures required of major-party candidates. Unlike most states, which allow substantially longer or even unlimited circulation periods, Illinois imposes one of the most restrictive and burdensome petition-circulation schemes in the nation. As shown in Exhibit A, Illinois' combined signature threshold and 90-day limit place it among the most restrictive jurisdictions in the country.

41. The limited timeframe for petition-circulation severely restricts the ability to reach voters across Illinois' 17th Congressional District, which spans fourteen counties and requires substantial travel to access its dispersed population centers. The district's expansive size and configuration significantly increase the time, cost and logistical difficulty necessary to gather signatures within the statutory period.

42. The cumulative effect of Illinois' ballot-access requirements imposes a severe burden on Plaintiff's ability to qualify for the general-election ballot as an independent candidate for the United States House of Representatives.

43. These burdens include extraordinarily high signature thresholds, a short circulation period, substantial geographic and logistical obstacles, and historically prohibitive petition-challenge practices.

44. Historical election records of Illinois show that no independent candidate for United States House of Representatives has ever succeeded in qualifying for the general-election ballot under the current statutory framework, demonstrating the practical impossibility of compliance.

45. Independent candidates also face high rates of petition challenges and signature invalidations, requiring them to collect far more than the statutory minimum to survive the objection process. These challenge practices further increase the practical burden of ballot access beyond the already substantial statutory threshold.

46. These burdens are not imposed to the same extent on major-party candidates, who face substantially lower signature thresholds, and significantly lower rates of petition challenges.

47. The combined effect of these stringent requirements—including the high signature threshold, the limited circulation period, the geographic scale of the district, and the historically prohibitive petition-challenge environment—imposes a severe burden on Plaintiff's ability to access the ballot, present his political views to voters, and participate meaningfully in the political process. These cumulative burdens also restrict the ability of voters to support an alternative candidate who may more closely reflect their interests.

48. Under the Anderson–Burdick framework, these severe burdens must be narrowly tailored to advance compelling state interests. Illinois' extreme signature requirement and related restrictions are not narrowly tailored, are not necessary to protect electoral integrity, and are not justified by any compelling or legitimate state interest.

49. The burdens imposed by Illinois' ballot-access scheme are substantial and operate collectively to restrict Plaintiff's rights to political association, political expression, and meaningful access to the electoral process.

Count II — Fourteenth Amendment (Equal Protection Clause)

50. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

51. Illinois treats independent candidates differently from major-party candidates without sufficient justification. The Equal Protection Clause prohibits states from imposing disparate and unjustified burdens on similarly situated candidates seeking access to the ballot.

52. Illinois' statutory scheme imposes signature requirements on independent congressional candidates that are eighteen to twenty-one times greater than those imposed on major-party candidates, despite both groups seeking access to the same general-election ballot. Independent candidates must collect 16,035 signatures within 90 days, while major-party candidates need only collect 744 to 852 signatures over the same timeframe.

53. This extreme disparity is not justified by any legitimate state interest and is not necessary to protect electoral integrity. By imposing vastly unequal burdens on candidates seeking the same office, Illinois' statutory scheme violates the Equal Protection Clause of the Fourteenth Amendment.

54. As applied to Plaintiff, Illinois' ballot-access requirements deny equal treatment under the law by imposing severe and unjustified burdens on his rights to political association, political expression, as well as his ability to qualify for the ballot and participate meaningfully in the electoral process.

Count III — Fourteenth Amendment (Due Process Clause)

55. Illinois' statutory scheme is arbitrary and denies Plaintiff a meaningful and realistic opportunity to qualify for the ballot. The State combines one of the highest signature

requirements in the nation with one of the shortest circulation periods, and historically high signature-invalidation rates, rendering ballot access for independent candidates effectively unattainable, a requirement no independent congressional candidate has ever successfully overcome.

56. By requiring 16,035 signatures within a rigid 90-day window—while most states require far fewer signatures and allow substantially longer or unlimited circulation periods—Illinois imposes procedural barriers that are irrational, unattainable, and unsupported by any reasonable justification.

57. This combination of an extraordinarily high numerical threshold, a sharply limited timeframe, and historically high signature-invalidation rates renders ballot access effectively illusory for independent candidates. These arbitrary and prohibitive policies deprive Plaintiff of fair and reasonable procedures in violation of the Due Process Clause of the Fourteenth Amendment.

58. Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

59. Illinois' statutory scheme is arbitrary, irrational, and denies Plaintiff a meaningful opportunity to qualify for the ballot. The combination of an extraordinarily high signature requirement, a short 90-day circulation window, and historically high signature-invalidation rates renders ballot access for independent candidates effectively unattainable.

60. By imposing requirements that no independent candidate has ever met, Illinois deprives Plaintiff of due process of law and violates the Fourteenth Amendment's guarantee of fair and re

PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

A. Declare that the challenged ballot-access provisions, as applied to independent candidates for the United States House of Representatives in Illinois' 17th Congressional District, violate the First and Fourteenth Amendments to the United States Constitution;

B. Enjoin Defendants from enforcing the statutory signature requirement of 16,035 signatures within a 90-day circulation period for the 2026 election cycle;

C. Order Defendants to accept Plaintiff's ballot-access filing upon a showing of reasonable support, or to impose a reduced, equitable, and constitutionally permissible signature requirement for independent candidates;

D. Award such further relief as the Court deems just and proper.

E. Award Plaintiff costs pursuant to 42 U.S.C. § 1988 and any other applicable authority.

*/s/ Randy Flowers*
Randy Flowers
pro se, Plaintiff
2509 30th Street
Rock Island, IL 61201
(309) 428-9682
my4kidsdad@netzero.net

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Randy Flowers

**DEFENDANTS**
Illinois State Board of Elections, et. al.

(b) County of Residence of First Listed Plaintiff: Rock Island County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Randy Flowers, pro se
2509 30th Street
Rock Island, IL 61201

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [X] 441 Voting / [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
Constitutional challenge to Illinois ballot access requirements for independent candidates for U.S. House of Representatives

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
- DEMAND $ Injunctive Relief
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 4 March 2026
SIGNATURE OF ATTORNEY OF RECORD: *Randy Flowers, pro se*

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____