E-FILED
Monday, 20 July, 2026 01:57:08 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| RANDY FLOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-cv-04062-SLD-RLH |
| | ) | |
| ILLINOIS STATE BOARD OF | ) | |
| ELECTIONS, LAURA K. DONAHUE, | ) | |
| JENNIFER M. BALLARD CROFT, | ) | |
| CRISTINA D. CRAY, TONYA L. | ) | |
| GENOVESE, CATHERINE S. MCCRORY, | ) | |
| JACK VRETT, CASSANDRA B. | ) | |
| WATSON, and JESSIE POOLE | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This is a case about the constitutionality of Illinois's ballot access requirements for independent Congressional candidates.  Plaintiff Randy Flowers is an aspiring United States Congressman in Illinois's 17th Congressional District.  He contends that the signature requirements for ballot access in Illinois are unconstitutional with respect to independent candidates in that district.  Now before the Court is Defendant Illinois State Board of Elections's (the "ISBE") motion to dismiss, ECF No. 26, Flowers's motion for leave to file a response thereto, ECF No. 31, and his motion for leave to file a second amended complaint ("SAC"), ECF No. 30.  For the following reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART, the motion for leave to file a response is GRANTED, and the motion for leave to file a SAC is DENIED.  Also before the Court is Flowers's proposed reply in support of his motion to file a SAC, ECF No. 36, which the Court construes as a motion for leave to file.  For the following reasons, this motion is GRANTED IN PART and DENIED IN PART.

1

**BACKGROUND**

Eligibility for ballot access for Congressional candidates in Illinois is governed by the Illinois Election Code. *See* 10 ILCS 5/1-1 to 5/30-3. The Election Code creates three categories of candidates: candidates of an "established political party," candidates of a new political party, and independent candidates. *See id.* § 5/7-2, 10-2, 10-3. A political party can be established within the State as a whole by receiving more than 5% of the vote cast for governor in the last general election, or within a particular district by receiving more than 5% of the vote cast for representative of that district in the last general election. *Id.* § 5/10-2. If more than one individual seeks to receive an established party's nomination, then the candidates must compete in a party primary. *Id.* § 5/7-5(b). A candidate qualifies for the primary ballot by submitting a nominating petition containing signatures equal to at least 0.5% of the qualified primary electors of their party within the congressional district. *Id.* § 5/7-10(b). Independent candidates and candidates of new political parties do not go through a primary process. Instead, they obtain ballot access for the general election by submitting nominating petitions including signatures of at least 5% of the total voters who voted within the congressional district in the last general election. *Id.* §§ 5/10-2, 10-3. During the 2026 election cycle in the 17th Congressional District, the 5% signature requirement translated to 16,035 signatures. The 0.5% requirement equated to 744 signatures for Republican candidates and 852 signatures for Democratic candidates. Illinois State Board of Elections, 2026 Candidate's Guide 28 (2026), https://www.elections.il.gov/NewDocDisplay.aspx?%2fM0cs48zOKVZyk9eAbpEoxjoGz9b5Ya GE%2bEuf7JVd2Tlx2Mybp2RbacEJVh848tnFOLoTd3G4cRsCxSj%2bcrL1MmhG9QsYgJ9O

2

QfN8tD1KklF6m89KlYSnqSZ0WOmujQNns%2fMKKc1nxvFYr0NAIKrFNNB1uL%2bNA8jn JGbKqcy9aI%3d.[1]

The Election Code imposes accompanying regulations on filing and signature collection. Candidates for nomination by an established political party must file their petitions not more than 141 nor less than 134 days prior to the primary election. 10 ILCS 5/7-12(1). Independent and new political party candidates must file not more than 169 days nor less than 162 days prior to the general election. *Id.* § 5/10-6. Candidates may begin circulating petitions to gather signatures beginning 90 days before the last day of their filing period. *Id.* § 5/7-10, 10-4. Only registered voters in the district may sign a petition, and the address the signer provides on the petition must match the address at which he or she is registered to vote. *Id.* §§ 5/7-10, 10-4, 3-1.2. Signers may not sign petitions for more than one established political party, *id.* § 5/7-10, nor may they sign petitions for more than one independent or new party candidate, *id.* § 5/10-3. All signatures must be in the presence of the person circulating the petitions, and the circulator must be at least 18 years of age, must be a United States citizen, and may only circulate petitions for one candidate. *Id.* §§ 7-10, 10-4. The circulator must submit a sworn and notarized statement at the bottom of each petition sheet attesting to their qualifications to serve as a circulator and that the signatures were signed in their presence. *Id.* §§ 7-10, 10-4. The Electoral Board can invalidate signatures that do not comply with these requirements. *See, e.g.*, *Jackson-Hicks v. E. St. Louis Bd. of Election Comm'rs*, 28 N.E.3d 170, 172 (Ill. 2015) (describing a hearing in which the Election Board invalidated 48 out of 171 signatures). Flowers alleges that "documented invalidation rates rang[e] from 30% to 60%." First Am. Compl. 5, ECF No. 24.

---

[1] When ruling on a motion to dismiss, the Court may take judicial notice of certain facts outside the First Amended Complaint. *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012). "In particular, the Court may take judicial notice of public record information obtained from an official government website." *Ambrosetti v. Or. Cath. Press*, 458 F. Supp. 3d 1013, 1016 n.1 (N.D. Ind. 2020).

On March 4, 2026, Flowers brought suit against the Illinois State Board of Elections and its members,[2] alleging that the enforcement of the Illinois Election Code unlawfully burdened his First and Fourteenth Amendment rights of political association, political expression, and equal protection under the law.  *See generally* Compl., ECF No. 1.  He also moved for a preliminary injunction, ECF No. 3, to prevent Defendants from enforcing the Illinois Election Code's signature requirement against him during this election cycle.  The Court denied Flowers's motion because he had not shown a likelihood of success on the merits.  *See generally* May 11, 2026 Order, ECF No. 29.  After Flowers filed his First Amended Complaint ("FAC"), now the operative complaint in this case, the ISBE brought the present motion to dismiss.

The ISBE raises four primary arguments for dismissal: (1) the FAC names only the ISBE as a defendant but Flowers's claim against the ISBE is barred by sovereign immunity, *see* Mot. Dismiss 4–7, (2) the FAC fails to comply with Federal Rule of Civil Procedure 8's requirement that a complaint contain "a short and plain statement of the claim," *id.* at 7–8, (3) the FAC fails to state a claim for relief on the merits, *id.* at 8–13, 15–21, and (4) Flowers lacks standing and his claims are unripe, *id.* at 14–15.  Flowers failed to file a response by May 18, 2026, the response deadline, but filed two motions on May 21, 2026: a motion for leave to file a SAC and a motion for leave to file a response to the ISBE's motion to dismiss.  The next day, Flowers filed a proposed response to the motion to dismiss, and on May 26, 2026, he filed a proposed SAC, ECF No. 34.  Defendants did not respond to the motion for leave to file a response out of time, but they oppose the motion for leave to file a SAC because it does not cure the deficiencies in the FAC.  *See generally* Resp. Mot. Leave File Resp., ECF No. 35.  Flowers then filed a reply in

---

[2] Flowers also filed suit against Bernadette Matthews, Jeremy Kirk, and Karen Kinney, the Rock Island County Clerk.  *See* Compl. 1, ECF No. 1.  He has since amended his complaint to remove any claims against these individuals.  *See* FAC 1.

support of his motion to file a SAC, ECF No. 36, which the Court construes as a motion for leave to file.  *See* Civil LR 7.1(B)(3).

## DISCUSSION

### I.    Motion for Leave to File a Reply

Under the Court's Local Rules "[a] reply to the response is only permitted with leave of Court."  Civil LR 7.1(B)(3).  "Replies may be allowed for reasons including the non-movant's introduction of new and unexpected issues in his response, and the interest of completeness."  *Magnuson v. Exelon Corp.*, 658 F. Supp. 3d 652, 658 (C.D. Ill. 2023) (alterations and quotation marks omitted).  "[T]he Court does not typically permit the moving party to file a reply in order to introduce new arguments or evidence that could have been included in the motion itself, or to rehash the arguments made in the motion."  *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011).  Since Flowers did not request permission before filing his proposed reply, he did not explain why a reply is appropriate.  Much of the reply is not even related to his motion to file a SAC.  Instead, nearly the entirety of the proposed reply serves as an argument on the merits of his constitutional claim.  *See* Reply 1–6, 8–13, 15–18.  It also seeks to correct a mistake in Flowers's response to the motion to dismiss, *id.* at 17, and responds to Defendants' claim that he used artificial intelligence to write his brief, *id.* at 13–15.  Flowers only briefly advances reasons that the SAC is appropriate.  *Id.* at 6–8.  In the interest of completeness, the Court GRANTS IN PART and DENIES IN PART leave to file a reply.  The Court will consider only the portions of Flowers's reply correcting a mistake in his previous filing and supporting his motion for leave to file a SAC.  *See id.* at 6–8, 17.

5

## II.    Motion for Leave File Second Amended Complaint

Since Flowers has already amended his complaint once, he may only do so for a second time with leave of the court or consent of Defendants.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  Reasons to deny leave include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Flowers requests leave to amend in response to the ISBE's motion to dismiss, especially its "sovereign-immunity and pleading-structure objections that can be addressed through targeted amendments."  Mot. Leave File SAC 1.  He identifies four amendments that the SAC will incorporate:

1.  Correct the caption and defendant naming to proceed under *Ex parte Young* by naming the appropriate Illinois State Board of Elections members and/or officers in their official capacities for prospective declaratory and injunctive relief, thereby curing any Eleventh Amendment and 42 U.S.C. § 1983 "person" issues identified in the Motion to Dismiss.
2.  Remove any remedy-only "counts" and present declaratory and injunctive relief solely in the Prayer for Relief.
3.  Present each constitutional theory in a separate, clearly labeled count consistent with Rules 8(a) and 10(b), and streamline narrative allegations to focus on facts material to the *Anderson-Burdick* analysis and related Fourteenth Amendment claims.
4.  Verify and update all allegations concerning the identifies and titles of Board members and officials based on current public records, and correct any inadvertent clerical errors.

*Id.* at 2.

In this case, any of these four amendments would be futile because they would not change the merits of Flowers's complaint.  The first three proposed amendments are unnecessary because "[t]he Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories."

6

*Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996).  If Flowers alleges sufficient facts to prevail, then the Court will not dismiss his complaint merely because it lacks precision in legal theories, organization, or captioning.  Flowers names the individual board members within the body of the FAC, so adding them to the caption is unnecessary.  *See infra* pt. IV(b)(i).  And since Flowers sues all individual defendants in their official capacities, *see* FAC 3–4, and seeks only injunctive and declaratory relief, *see id.* at 24–25, the complaint already contains all that is necessary to proceed under *Ex Parte Young*, 209 U.S. 123 (1908).  The fourth proposed amendment is also unnecessary because when public officers sued in their official capacity are replaced, "[t]he officer's successor is automatically substituted as a party."  Fed. R. Civ. P. 25(d).  As a result, none of the amendments Flowers identifies would meaningfully impact the Court's analysis of the merits of his case.  Since the Court is able to assess the merits of Flowers's case without amendment, and because allowing the amendment would cause delay in a case that is professedly "time-sensitive," *see* Mot. Leave File SAC 2, the motion for leave to file a SAC is DENIED.

## III.    Motion for Leave File Response Out of Time

The ISBE filed its motion to dismiss on May 4, 2026, meaning Flowers's deadline to respond was May 18, 2026.  *See* Civil LR 7.1(B)(2) (imposing a 14-day deadline to respond to motions).  Federal Rule of Civil Procedure 6(b)(1) states that courts may extend a deadline "for good cause" on a motion filed after the deadline has passed "if the party failed to act because of excusable neglect."  Several factors are considered when determining whether a failure to act qualifies as "excusable neglect": "'the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the mov[ing party], and whether the mov[ing

7

party] acted in good faith.'" *Workman v. Deere & Co.*, 4:24-cv-04245-SLD-RLH, 2025 WL 2783558, at *2 (C.D. Ill. Sep. 30, 2025) ((alteration in original) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Flowers states that he "inadvertently missed the response deadline due to a good-faith calendaring oversight." Mot. Leave File Resp. 1. Even if Flowers's neglect was careless, it is excusable. Defendants have not objected to Flowers's motion, suggesting there is no risk of prejudice. The delay lasted only three days and has not impacted judicial proceedings. The reason for the delay was within Flowers's control, but it was inadvertent and there is no indication that Flowers acted in bad faith. Accordingly, Flowers's motion for leave to file a response out of time is GRANTED.

## IV. Motion to Dismiss

### a. Legal Standard

A court may dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint states a claim if it "plausibly give[s] rise to an entitlement to relief" by pleading sufficient factual content that the court can reasonably infer "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). When reviewing a Rule 12(b)(6) motion to dismiss, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). A court need not accept a complaint's legal conclusions. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013).

8

### b. Analysis

As the Court explained when ruling on Flowers's motion for a preliminary injunction, this case, though nominally proceeding on numerous counts, is rightly subject to a single legal analysis. *See* May 11, 2026 Order 7–8. This test, referred to as the *Anderson-Burdick* test, evaluates whether, under the First and Fourteenth Amendments, the character and magnitude of the burden imposed by a state's election laws are justified by the underlying state interests. *See id.* at 7–9; *Anderson v. Celebrezze*, 460 U.S. 780, 788–89 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Krislov v. Rednour*, 226 F.3d 851, 859–60 (7th Cir. 2000). Because the Court has already clarified the theory under which Flowers may proceed, it does not find it necessary to address further any arguments related to other legal tests. And because the presence of extraneous counts in the FAC does not mask the gravamen of Flowers's complaint—especially since the Court's previous order clarified the operative legal theory in this case—the Court will not dismiss the FAC for failure to comply with the Rules 8 or 10 of the Federal Rules of Civil Procedure. The Court also addressed justiciability in its previous order. *See* May 11, 2026 Order 5–6. The ISBE's jurisdictional arguments are rejected for the reasons stated therein. The Court therefore proceeds to consider (a) the identity of the proper defendants, and (b) whether dismissal for failure to state a claim is proper on the merits.

### i. Proper Parties

The ISBE makes a two-part argument: (1) the case cannot proceed against the ISBE because it is protected by sovereign immunity, and therefore (2) the case must be dismissed because the FAC lists no other defendants in the caption. *See* Mot. Dismiss 4–7.

Flowers does not contest the first component of the ISBE's argument. *See* Resp. Mot. Dismiss 8–9, ECF No. 33. He concedes that "the Board itself cannot be sued directly for

damages or retrospective relief" and clarifies that he intends to proceed against the Board

Members in their official capacities under *Ex Parte Young*, which allows an individual to bring

suit to enjoin a state official from enforcing state law without implicating sovereign immunity or

the Eleventh Amendment. *Id.*; *see generally Ex Parte Young*, 209 U.S. at 159–60. Accordingly,

Flowers's claim against the ISBE is DISMISSED.

However, the Court does not accept the second component of the ISBE's argument.

Federal Rule of Civil Procedure 10(a) does state that "[t]he title of the complaint must name all

the parties." However, as the Seventh Circuit has explained, Rule 10 is concerned with

"identifying and serving defendants." *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005).

In fact, Rule 10(a) allows post-complaint pleadings to "refer generally to other parties" after

naming the first party on each side. Flowers identified the individual members of the ISBE ("the

Board Members") in his first complaint, *see* Compl. 1, and each of them have been served, *see*

*generally* Executed Summonses, ECF No. 12.[3] The FAC lists each Board Member under the

header "Parties," elaborating on the identity of those included in the caption "Illinois State Board

of Elections, et al." FAC 1, 3–4. In these circumstances, the requirements of Rule 10 have been

satisfied; requiring more would be an empty formality. Flowers may still seek injunctive and

declaratory relief against the Board Members in their official capacities.

Although the motion to dismiss was nominally brought only by the ISBE, for the sake of

equity and judicial economy, the Court will consider the ISBE's merits arguments to determine

whether Flowers's claim against the Board Members should be dismissed.

---

[3] The only exception is Jessie Poole, who the parties appear to agree is not a member of the ISBE Board. *See* Mot. Dismiss 4–5; Resp. Mot. Dismiss 11. Because the parties do not dispute that Poole is not a member of the ISBE Board, and because Flowers has not presented any other reason for liability against an individual by that name, any claim against Poole is DISMISSED.

## ii. Constitutional Merits

Defendants present several reasons to dismiss Flowers's complaint, but the crux of their argument is that Supreme Court and Seventh Circuit precedent clearly establishes that Illinois's ballot access requirements are constitutional. *See* Mot. Dismiss 15–21. As the Court reasoned in its prior order, the case law strongly suggests that Defendants' assessment is correct. *See generally* May 11, 2026 Order.[4]

The Supreme Court has explained that ballot access requirements may run afoul of First and Fourteenth Amendment rights to free speech and association, equal protection of the laws, and effective voting. *See Anderson*, 460 U.S. at 786 n.7; *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979). Courts assess whether these rights are violated by applying a balancing test wherein courts must examine "the character and magnitude of the burden and the extent to which the law serves the State's interests." *Krislov*, 226 F.3d at 859–60 (citing *Anderson*, 460 U.S. at 789; *Burdick*, 504 U.S. at 434). Under this test, courts first determine "the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. This is ultimately a question of "whether a reasonably diligent candidate could be expected to be able to meet the requirements and gain a place on the ballot." *Stone v. Bd. of Election Comm'rs for Chi.*, 750 F.3d 678, 682 (7th Cir. 2014) (quotation marks omitted). Courts then apply a sliding-scale scrutiny wherein the level of scrutiny depends on the extent of the burden. *Burdick*, 504 U.S. at 434. If the regulation severely restricts constitutional rights, then "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). "But when a

---

[4] For a more exhaustive analysis of the relevant case law, see this Court's May 11, 2026 Order. Its conclusions are only summarized briefly here. Though Flowers's claim is held to a different standard at the motion to dismiss stage, the weaknesses of his claim identified in the prior order largely apply with equal force.

state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson*, 460 U.S. at 788).

Applying this standard, all levels of courts have repeatedly found that ballot access restrictions similar to those imposed by the Election Code are constitutional. Courts have upheld similar signature requirements, *see, e.g.*, *Jenness v. Fortson*, 403 U.S. 431, 432, 442 (1971) (upholding Georgia requirement that independent candidates submit a petition signed by "at least 5% of the number of registered voters at the last general election for the office in question"); *Am. Party of Tex. v. White*, 415 U.S. 767, 788–90 (1974) (upholding Texas provision requiring independent candidates to submit signatures of either 3% or 5%—depending on the office—of the vote cast for governor in that district in the last election); *Libertarian Party of Ill. v. Rednour*, 108 F.3d 768, 775 ("[The plaintiff] cannot argue that the 5% petitioning requirement is severe on its face."), petitioning windows, *see, e.g.*, *Nader v. Keith*, 385 F.3d 729, 736–37 (7th Cir. 2004) (90 days); *Stone*, 750 F.3d at 680, 684 (90 days); *Am. Party of Tex.*, 415 U.S. at 786 (55 days), filing deadlines, *Jenness*, 403 U.S. at 433–34 (finding ballot access restrictions including a filing deadline the second Wednesday in June constitutional); *Nader*, 385 F.3d at 735–36 (affirming denial of motion seeking to enjoin ballot access requirement that, *inter alia*, third party candidates file nominating petition 134 days before the general election), and restrictions on who can sign or circulate petitions, *see, e.g.*, *Stone*, 750 F.3d at 680, 684 (considering scheme in which "voters may not sign more than one nominating petition for the same office in a single election cycle"); *Am. Party of Tex.*, 415 U.S. at 778, 789 (considering scheme requiring signatures to be administered and signed with a notarized oath and barring those who voted in party primaries from signing independent petitions); *Nader*, 385 F.3d at 731, 734 (considering

12

scheme requiring signatories to provide an address that is the same as the address where they are registered to vote).

Moreover, several courts have specifically held that identical or nearly identical versions of the Illinois Election Code are constitutional. *See generally Tripp v. Scholz*, 872 F.3d 857 (7th Cir. 2017) (affirming grant of summary judgment); *Gill v. Scholz*, No. 3:16-cv-03221-SLD-EIL, 2022 WL 992729 (C.D. Ill. Mar. 31, 2022) (granting summary judgment), *vacated and remanded on mootness grounds sub nom. Gill v. Linnabary*, 63 F.4th 609 (7th Cir. 2023); *Stevo v. Keith*, No. 08-3162, 2008 WL 4059051 (C.D. Ill. Aug. 27, 2008) (denying motion for preliminary injunction and granting motion to dismiss), *aff'd*, 546 F.3d 405 (7th Cir. 2008); *Davis v. Smart*, No. 14-3224, 2015 WL 1208787 (C.D. Ill. Mar. 13, 2015) (granting motion to dismiss).

Flowers's most forceful claims to the contrary hold little sway. First, he argues that *Navarro v. Neal*, 716 F.3d 425 (7th Cir. 2013), is dispositive because it struck down as unconstitutional Illinois's 5% signature requirement as applied to an independent congressional candidate. Resp. Mot. Dismiss 2, 15–19. But that is not what the *Navarro* court did. In *Navarro*, the Seventh Circuit held that 10 ILCS 5/7-61, a portion of the Election Code governing ballot access for established party candidates (and therefore not directly relevant to the case at hand), was constitutional because it imposed only a reasonable and nondiscriminatory burden and served an important state interest. *Navarro*, 716 F.3d at 430–32. In his reply, Flowers states that he intended to refer to *Lee v. Keith*, 463 F.3d 763 (7th Cir. 2006), not *Navarro*. Reply 17. In its prior order, the Court extensively weighed the applicability of *Lee* to this case. *See* May 11, 2026 Order 19–20. It concluded that *Lee* is not controlling because, as compared to the present Illinois Election Code, the prior version of the Election Code at issue in *Lee* required

independent candidates to obtain twice as many signatures and file their petitions nearly twice as many days away from the general election. *See id.*

Second, Flowers's arguments rooted in the geography and weather of the 17th District do little to persuade the Court that he faces a severe burden. As the Court has already noted, the 17th District is "large, but not uniquely so." *Id.* at 15. In fact, the geography of its population centers is such that "[e]nlisting circulators even in only the four largest population centers in the 17th District would provide access to a substantial amount of the district's population with very little travel." *Id.* at 16. With respect to the climate of the 17th District, "Flowers gives no reason to believe the weather during the petitioning window is constitutionally relevant," *id.*, and even if it were, "the weather described by Flowers is not so extreme as to meaningfully alter the Court's analysis" since "it is not unreasonable to expect aspiring United States congressmen to continue their campaign activity despite the presence of wind and/or rain." *Id.* at 16–17.

Third, Flowers argues that the 5% signature requirement is unconstitutional because it is substantially higher than the signature requirement for established party candidates. *See* Resp. Mot. Dismiss 24. This, too, is unavailing since comparing the two requirements is "to compare apples with oranges." *Libertarian Party of Ill.*, 108 F.3d at 776. As the Court stated in its prior order, "Flowers ignores the reality that established party candidates must traverse a primary process, which itself establishes support for the eventual nominee. Moreover, it is not self-evident that the signature requirement for independent candidates is more burdensome than the primary gauntlet faced by established party candidates." May 11, 2026 Order 21; *see also Libertarian Party of Ill.*, 108 F.3d at 776 ("The two petitioning requirements contain different percentages because they are used at two different times for two different purposes.").

14

Having said all that, while precedent strongly suggests that the Election Code is constitutional and most of Flowers's arguments to the contrary have little merit, the Court is not bound by this precedent since the constitutional test for ballot access requirements is "fact-intensive." *Gill v. Scholz*, 962 F.3d 360, 365 (7th Cir. 2020). In *Gill*, the Seventh Circuit instructed that "the burden the 5% signature requirement imposes on candidates . . . varies between elections and between districts," and the unique burden imposed by the facts of each case "must be considered by district courts when applying the *Anderson-Burdick* balancing test." *Id.* Accordingly, the Court must consider whether Flowers brings factual allegations that suggest the Election Code imposes an unusually high burden under the circumstances.

Flowers raises two factual allegations that previous cases have not assessed. First, he maintains that no independent candidate for United States Representative has ever satisfied Illinois's 5% signature requirement. *See* FAC 2 ("No independent congressional candidate has ever succeeded in meeting the signature threshold imposed by 10 ILCS 5/10-3 in the entire history of the statute. Not one. In any district. In any election cycle."). Of course, several independent candidates have, in fact, been listed on the general election ballot. *See* May 11, 2026 Order 18; *Election Results*, Ill. State Bd. of Elections, https://www.elections.il.gov/ElectionOperations/ElectionVoteTotals.aspx (last accessed May 5, 2026).[5] However, independent candidates may be listed on the general election ballot without meeting the 5% signature requirement if, for example, their petitions were not objected to or if they sought election in an election year following redistricting. *See* May 11, 2026 Order 18. It is thus inappropriate to discount Flower's allegation that no independent candidate has ever met satisfied the 5% signature requirement. If true, this fact would weigh in favor of finding that the

---

[5] It is appropriate to take judicial notice of the facts contained in this website. *See supra* n.1.

15

Election Code imposes a substantial burden on independent candidates.  *See Lee*, 463 F.3d at 769 ("[B]allot access history is an important factor in determining whether restrictions impermissibly burden the freedom of political association . . . .").

Second, Flowers alleges that up to 60% of signatures are routinely invalidated by the State of Illinois and that, as a result, the burden of the Election Code is substantially higher than the 5% signature requirement suggests on its face.  FAC 5.  The Seventh Circuit has stated that the best way to evaluate the burden imposed by signature invalidation "is to determine the total number of petitions that a [candidate] would have to submit in order to be reasonably confident of having enough valid ones to get on the ballot."  *Nader*, 385 F.3d at 734.  In *Nader*, the invalidation process was found to not pose an excessive burden because, even if one-third of signatures were invalidated, the plaintiff only needed to collect signatures equal to "slightly more than one-half of one percent of the number of registered voters in Illinois."  *Id.*  In this case, however, if 60% of signatures were invalidated, then Flowers would have to obtain a greater number of signatures than required by the prior version of the Election Code found unconstitutional in *Lee*.  *See Lee*, 463 F.3d at 772 (holding that ballot access restrictions including 10% signature requirement was unconstitutional).

In combination, Flowers's allegations about signature invalidation and the failure of previous independent candidates to meet the 5% signature requirement, if true, suggest that the Election Code imposes a greater burden on his candidacy than that assessed in any cases cited by Defendants or by the Court in its prior order.  It is therefore appropriate for this case to proceed to discovery to give the parties an opportunity to gather evidence proving or disproving these factual allegations.

**CONCLUSION**

Accordingly, Defendants' motion to dismiss, ECF No. 26, is GRANTED IN PART and DENIED IN PART.  Plaintiff Randy Flowers's claims against the Illinois State Board of Elections and Jessie Poole are DISMISSED.  The Clerk is directed to terminate these defendants on the docket.  Flowers's constitutional claim brought under the First and Fourteenth Amendments may proceed against the remaining Defendants, members of the Illinois State Board of Elections.  Any claims brought under other constitutional provisions or legal theories are DISMISSED.  Flowers's motion for leave to file a response, ECF No. 31, is GRANTED.  His motion for leave to file a second amended complaint, ECF No. 30, is DENIED.  Flowers's proposed reply, ECF No. 36, construed as a motion for leave to file, is GRANTED IN PART and DENIED IN PART.

The Court notes that, in recent filings, Flowers has included defendants in the caption who were not named in the operative complaint.  *See, e.g.*, Mot. Leave File Resp. 1, ECF No. 31 (naming Bernadette Matthews, Jeremy Kirk, and Rick S. Terven).  The current Defendants in this case are only the following individuals named in the First Amended Complaint, ECF No. 24: Cassandra B. Watson, Cristina Cray, Laura K. Donahue, Tonya L. Genovese, Catherine S. McCrory, Jack Vrett, and Jennifer M. Ballard Croft.  If Flowers wishes to add additional parties, the Court grants limited leave to amend within fourteen days only for the purpose of naming additional defendants.

Entered this 20th day of July, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE

17